Opinion of the Court.
Thompson filed his bill in equity against March, setting up the following entry:
Statement of the case.
" May 11th, 1780—William Stone, jun. enters 500 acres, upon a treasury warrant, joining the above entry to the east.”
The above entry referred to, is in the following words:
“ May 11th, 1780—William Stone, sen. enters 500 acres, upon a treasury warrant, on the west side of the ridge between Hinkston’s Fork and Stoner’s, joining the lands entered by William Hally, and to the south of the same.”
He charged, that March had settled himself upon, and enclosed a part of the survey made on the foregoing entry, claiming it under an elder grant, but illegal and void entry.
March answered the bill, contesting the validity of Thompson’s entry in every point, setting up two entries and patents of elder date, as he alleges; the one in the name of Hawkins and Boggs, and the other in the name of John Whitledge. He alleges twenty years’ possession in himself under one of these claims, and insists on every point of defence.
After the cause had progressed for some time, and Thompson had begun to collect testimony to establish the calls of his entry, March gave a written admission of these calls, and thus virtually abandoned this defence set up in his answer denying the validity of the entry. After that period, the whole stress of preparation was turned to a point which cannot easily be discovered in the pleadings; and that is, whether the deed of March, from Whitledge’s heirs, did interfere with the survey set up by Thompson ? On this point, a great quantity of testimony has been collected, tinctured throughout with the spirit of animosity between the parties, until the record is swelled to an enormous size. The interference, as claimed on one side and defended on the other, does not amount to one half acre.
The court below decided in favor of Thompson, to the extent of the interference claimed, and from that decision March has appealed.
We shall barely observe, with regard to the entry of William Hally, called for in the afore cited entry of William Stone, sen. that it depends on the entry of James Moore, of 1000 acres, which was collaterally, brought into contest in the case of Doolin vs. Farrow, 2 Bibb 361, and was there adjudged valid. Its calls, *312 in this case, being admitted, we conceive it ought now sustained in the same manner. When it is surveyed as there directed, and the adjoining entries in the claim are surveyed according to their calls, the entry of William Stone, jun. held by Thompson, will cover the land in contest, completely. Thompson has, therefore, made out a superior title in a court of equity, by the calls of his entry. But the inquiry still remains, does his survey, originally made on this entry, cover the land ? On this point, without reciting the evidence which bears on the matter, we fully concur with the court below, that the weight of evidence is in favor of Thompson, and that the corner stood where he now claims it; or, if it did not, and its true position is elsewhere, it must be placed more unfavorable to March. Thompson’s title to the land, is therefore complete.
Statement of the case.
It has been, however, contended, that admitting the true position of Thompson’s corner to be as claimed by him, yet March’s deed from the heirs of Whitledge, the elder patentee, does not cover the land in contest; and, therefore, Thompson ought not to succeed. This is placing the defence of March, in argument, on grounds different from what he has assumed in his pleadings and his proof. He does not allege or pretend, that his deed and his enclosure do not cover the land covered by Thompson. To that, he alleges a complete title, and lays down his boundaries, and proves them to be as laid, and insists that Thompson’s title does not cover any part of him ; and on this, lays the stress of the question, in which he is defeated. It is true, that March’s deed calls for Stone’s, now Thompson’s line, and for a corner at or near to that of Stone, though not composed of the same timber. This line of Stone was then an open line, and it may appear probable, that the parties to the deed of Whitledge’s heirs to March, intended to adjoin it, but mistook its true position; and had March rested his defence on this point, his case might have presented a different aspect.
1. We have not, however, thought it necessary to determine upon the true construction of March’s deed, or whether the intention of the parties not to interfere, is so apparent as to prevent it. March gives his own position, as he alleges it was demarked to him. This *313 position Thompson does not contest. It must, therefore, be taken as a fact admitted, and not open to controversy in argument; and as Thompson has proved an interference within this agreed boundary, he must succeed.
A party in chancery can derive no advantage from evidence disproving a fact which has been admitted in pleading, however clear the proof may be.
On the affirmance of a decree in equity, the court of appeals must decree the costs of this court against the appellant.
The decree of the court below, as to costs in favor of Thompson, has been earnestly assailed in argument, on the grounds of the enormous costs* incurred, when compared with the small quantity of land. It is true, the land in controversy does not amount to half an acre, a very small quantity, in a triangular form, or nearly so; and we cannot commend the spirit with which the claim has been prosecuted. But, however small a portion of commendation may be ceded to the prosecution, it cannot be less than that due to the defence. It does not appear what is the value of the land, or of what importance it may be to the farm of Thompson ; so that it is hard to determine, from any thing apparent in the record, that it is too trivial for the notice of the law.
The question of boundary involved, is, and must still be, an important one. Had March put the contest on his own boundary, and if interference was found, yielded it as a mistake, or contended that the true construction of his deed would not admit of an interference, his claim to an exemption from costs would have been more tenable. But he assumed quite a different attitude, and increased the necessity of much testimony with regard to a corner, with which he must have been acquainted, and which, by the proof, he was probably instrumental in destroying.
2. We cannot, therefore, say that the chancellor erred in giving costs against him ; and as the decree must here be affirmed, the statute regulating the proceedings in this court, requires the costs to be awarded against him here.
It is, therefore, decreed and ordered, that the decree aforesaid be affirmed; which is ordered to be certified to said circuit court.

 The costs taxed in the Court of Appeals exceeded $ 70.